# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 12 |
| VERA T. WELTE ) | |
| TESTAMENTARY TRUST, ) | |
| ) | Bankruptcy No. 19-00808 |
| Debtor ) | |

## RULING ON MOTION TO DISMISS AND OBJECTION TO CLAIM

This matter came before the Court by evidentiary hearing in Sioux City, Iowa on November 17, 2020. Jessica A. Board appeared for the Debtor Vera T. Welte Testamentary Trust ("Trust"). Daniel L. Hartnett and Jeremy B. Saint appeared for Creditor The Security National Bank of Sioux City, Iowa as personal representative of The Estate of Roger Rand ("Rand Estate"). Carol F. Dunbar appeared as the Chapter 12 Trustee. The Court received exhibits, heard argument, and allowed post-trial briefing. All papers have been submitted and the case is ready for decision. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## STATEMENT OF THE CASE

The Trust filed its Chapter 12 petition on June 17, 2019. (ECF Doc. 1). On August 23, 2019, the Rand Estate filed a Proof of Claim for $3,429,500.69. ("Claim No. 2"). The Rand Estate based its claim on property pledged to secure money the Estate loaned to Frank Welte, the only current beneficiary of the Trust.

On August 27, 2019, the Rand Estate filed a Motion to Dismiss. It argued that the Trust is an ordinary testamentary trust and therefore not an eligible debtor under the Bankruptcy Code. (ECF Doc. 16). The Trust filed a resistance to the Motion to Dismiss and an Objection to Proof of Claim No. 2. The Trust argued that (1) the mortgages underlying the claim are invalid because they were entered fraudulently or under duress and because the Trustee was not permitted to enter into the mortgages; and (2) that the Rand Estate lacks standing to assert the claim because the debt has already been paid. (ECF Doc. 29). The Trust also argued it qualifies as a debtor, and the Rand Estate also lacks standing to raise the issue. For the following reasons, the Court grants the Trust's Objection to Proof of Claim and denies the Rand Estate's Motion to Dismiss.

## FINDINGS OF FACT

The Trust was created by the Last Will and Testament of Vera T. Welte dated December 30, 2002 and the Codicil to the Last Will and Testament of Vera T. Welte, dated October 7, 2008. The Trust appointed Vera's son, Claire Welte to serve as trustee ("Trustee"). Frank Welte ("Frank") is the Trustee's brother and the only current beneficiary of the Trust. Under the Trust, Frank enjoys the right to receive income from the Trust during his lifetime, with the remaining corpus, if any, to be distributed to his descendants upon Frank's death. The Trust's primary asset is 160 acres of land ("Trust Land") which is farmed through a rental

agreement. (Ex. 8; see also ECF Doc. 1). The Trust derives additional income from interest on investment in an LLC.

The Trustee is vested with broad powers under the Trust. Such powers include the power: "[t]o borrow money and mortgage or pledge trust property"; to borrow money to acquire additional real estate; to invest in stocks, bonds, real estate, trusts, or any other investment company; to pay expenses and collect insurance proceeds; and "[t]o do all other acts to accomplish the proper management, investment and distribution of the trust." (Ex. 1).

The Rand Estate came into being when Roger E. Rand ("Roger") died in August of 2016. Before his passing, Roger was a farmer in Salix, Iowa. In addition to farming, Roger operated a seed, chemical, and fertilizer business selling crop inputs to area farmers. Throughout the years, Roger would extend credit to farmers purchasing crop inputs from his business. At times, Roger expanded this practice to include advancing funds to farmers for other expenses, such as cash rent payments.

In 2009, Frank approached Roger for crop inputs and financing. Because Roger and Frank were unfamiliar with one another, Roger initially sold Frank crop inputs on a cash-and-carry basis. As their business relationship progressed, Roger began extending credit to Frank for additional crop expenses. In exchange, the Trustee executed mortgages pledging trust property as additional security. This

3

practice continued annually until Roger's death in 2016. The amount for each of the relevant mortgages and related promissory notes were as follows:

| Loan Date | Note Amount | Mortgage Date | Mortgage Amount |
|---|---|---|---|
| 03/01/2013 | $2,000,000.00 | 03/28/2013 | $1,000,000.00 |
| 03/26/2014 | $848,412.00 | 07/17/2014 | $1,636,000.00 |
| 07/17/2014 | $1,151,588.00 | 07/17/2014 | $1,636,000.00 |
| 07/17/2015 | $1,106,810.15 | 07/17/2015 | $1,106,810.15 |

In each instance, the Trustee and Frank would visit Roger's attorney's office to sign the paperwork. Both the notes and the mortgages contained disclosures directing the parties to read the documents before signing. Despite these disclosures, the Trustee never actually read the documents before signing them. Instead, he proceeded on the assumption that the most he could validly mortgage was the income—to which Frank was entitled—for a particular year. As a result, the Trustee was unaware that the mortgages contained dragnet provisions purporting to secure not only the repayment of the corresponding note, but also the repayment of all other obligations then existing or thereafter arising—including future advances.

When problems arose with Frank's repayments, the Rand Estate initiated a foreclosure action on the Trust Land pledged as security for Frank's debts. When the Trust filed—as a business trust—for Chapter 12 relief, the Rand Estate

submitted a claim based on the mortgages dated March 1, 2013 through July 17, 2015. Four days later the Rand Estate filed its Motion to Dismiss. The Trust objected to the claim and resisted the Motion to Dismiss.

At the evidentiary hearing, the Trust and the Rand Estate each called a CPA to testify. The accountants testified about the initial amounts of the debts—the face-value of the notes versus another amount that was allegedly loaned to Frank over and above the note amount. They each then gave opinions on the application of payments. The accountant for the Rand Estate concluded there was an amount due of $3,429,500.69. (Ex. 109). The Trust's accountant concluded there was no debt due and that there was an over payment to the Rand Estate of $1,978,024.11. (Ex. 22).

There were only two differences in methodology between the Rand Estate's calculations and the Trust's calculations. First, the Trust's accountant used the note amounts rather than any other number to calculate initial debt. Second, the Trust's accountant applied the payments as they came in, rather than isolating payments to a specific loan. The second difference in methodology resulted in pronounced differences in the end result. The Rand Estate's accountant applied payments as if no payments had been made between March 11, 2014 and November 22, 2017. Payments were undisputedly made during that period. The Rand Estate's accountant however, applied those payments to a later loan. This

5

gap in payments allowed interest to accrue at default rates for several years, despite the fact that Frank was making payments on amounts due. Rather than continuing payments on the previous note—which was due—there was a switch to pay the next note—which was not yet due. The application of payments and corresponding gaps in payments are as follows:

| Note Date | Note Maturity | Last Payment on Note before Gap |
|---|---|---|
| 03/01/2013 | 03/01/2014 | 03/11/2014 |
| 03/26/2014 | 04/11/2014 | 04/07/2015 |
| 07/17/2014 | 03/01/2015 | Paid in Full |
| 07/17/2015 | 03/01/2016 | 08/04/2016 |

## DISCUSSION

A. **Objection to Proof of Claim**

"In the bankruptcy context, a claim is any right to payment." Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation), 318 B.R. 147, 150 (B.A.P. 8th Cir. 2004) (citing 11 U.S.C. § 101(5)). A creditor may file a proof of its claim against a debtor with the bankruptcy court. 11 U.S.C. § 501(a).

> A claim, proof of which is filed pursuant to Section 501 of the Bankruptcy Code, is deemed allowed unless a party in interest objects. If an objection to a claim is filed, the court shall determine the amount of such claim as of the date of the bankruptcy petition and shall allow such claim in such amount except to the extent that any of nine enumerated exceptions apply.

6

Dove-Nation, 318 B.R. at 150 (citations omitted) (citing 11 U.S.C. § 502(a) & (b)(1)–(9)). Section 502(b) specifically allows for an objection to the extent "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . ." 11 U.S.C. § 502(b)(1). "If the objector presents evidence supporting an objection, the ultimate burden of persuasion shifts to the claimant to establish its claim." In re Schaefer, 324 B.R. 738, 744 (Bankr. N.D. Iowa 2005) (citing Dove-Nation, 318 B.R. at 152).

1. **Validity of Mortgages**

The Trust first objects to the Rand Estate's Proof of Claim arguing that the mortgages are invalid or unenforceable because the Trustee did not have power to enter into the broad mortgages the Rand Estate seeks to enforce. The Trust argues the mortgages must be limited to no more than the note amounts. The Trust also argues the underlying debt has in fact, already been paid in full. The Court will address each of these arguments in turn.

a. **Trustee's Power to Enter the Mortgages**

The Trust argues that the Trustee did not have authority to enter into the mortgages. The Court disagrees.

The starting point in this analysis is the Iowa Code. "(1) A trustee, without authorization by the court, may exercise the following powers: (a) The powers

conferred by the terms of the trust." Iowa Code § 633A.4401(1)(a) (2021). The Iowa Code specifically protects third parties (like the Rand Estate) doing business with a trustee:

> With respect to a third party dealing with a trustee or assisting a trustee in the conduct of a transaction, if the third party acts in good faith and for a valuable consideration and without knowledge that the trustee is exceeding the trustee's powers or is improperly exercising them, the following apply:
>
> (a) A third party is not bound to inquire as to whether a trustee has power to act or is properly exercising a power and may assume without inquiry the existence of a trust power and its proper exercise.
>
> (b) A third party is **fully protected** in dealing with or assisting a trustee, as if the trustee has and is properly exercising the power the trustee purports to exercise.

Iowa Code § 633A.4603(1) (emphasis added); see also Shaffer v. Tewes, 466 F. Supp. 3d 980, 995 (N.D. Iowa 2020). "The code provision's language indicates it is intended to protect third parties who enter an agreement with a trustee and later find out that the trustee had no authority to enter into the agreement or had exceeded the scope of the trustee's authority." Id.; see also Restatement (Third) of Trusts § 108 (Am. Law Inst. 2012) ("A third party who acquires an interest in trust property through a breach of trust is entitled to retain or enforce the interest to the extent the third party is protected as a bona fide purchaser.").

Here, the Trust document specifically states that the Trustee shall have the power "[t]o borrow money and mortgage or pledge trust property." (Ex. 1). The Codicil does not contain any language limiting the Trustee's ability to mortgage or pledge trust property. Even if the Trustee was not specifically authorized to mortgage trust property, Roger did not have any obligation to inquire whether the Trustee had the power to act or was properly exercising his power. Roger, as a third party, is given a presumption that the Trustee had power to mortgage the property and was properly exercising this power.

The Court has not been presented with any evidence indicating that Roger knew there were questions about the Trustee's authority and was not acting in good faith in obtaining the mortgage. The evidence shows Roger, acting in good faith, gave valuable consideration in the form of millions of dollars to Frank and relied on the mortgages to make those loans. The Court finds that the mortgages are valid.

    b.    **Mortgages and Note Amounts**

The Trust argues that even if the mortgages are valid to some degree, they are limited to no more than the face value of the notes. Each mortgage and each note have a set amount of funds loaned. Some notes include a range of funds to be

loaned, and the mortgage amounts listed do not always correspond directly with the related notes.

Future advance clauses are also called dragnet clauses. In re McMahon, Ch. 7 Case No. 18-00443, 2018 Bankr. LEXIS 1766, at *3 (Bankr. N.D. Iowa June 8, 2018). The Iowa Code provides for the enforceability of future advance clauses provided certain conditions are satisfied. See Iowa Code § 654.12A (2021). While still effective, "Iowa views with disfavor the inclusion of future advance clauses within mortgages drafted by the lender, especially when those clauses are situated within the mortgage contract in such a way that lends itself easily to lender overreaching and surprise." Poweshiek Cnty. Sav. Bank v. Hendrickson, No. 5-225/04-0927, 2005 Iowa App. LEXIS 423, at *9 (Iowa Ct. App. May 25, 2005) (citing Farmers Tr. & Sav. Bank v. Manning, 311 N.W.2d 285, 289 (Iowa 1981). Future advance clauses "are adhesion contracts and are construed against the writer." Nat'l Loan Invs., L.P. v. Martin, 488 N.W.2d 163, 166 (Iowa 1992) (citing In re Simpson, 403 N.W.2d 791, 793 (Iowa 1987)).

> In the absence of clear, supportive evidence of a contrary intention a mortgage containing a dragnet type clause will not be extended to cover future advances unless the advances are of the **same kind and quality** or **relate** to the same transaction or series of transactions as the principal obligation secured or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefor.

10

Freese Leasing, Inc. v. Union Tr. & Sav. Bank, 253 N.W.2d 921, 927 (Iowa 1977) (emphasis added) (quoting Emporia Bank & Tr. Co. v. Mounkes, 519 P.2d 618, 623 (Kan. 1974)); see also Nat'l Bank of Waterloo v. Moeller, 434 N.W.2d 887, 891 (Iowa 1989) (finding 654.12A consistent with Freese Leasing, Inc.).

The Iowa Court of Appeals specifically stated when a future advance can apply:

> The language of the future advances clause applies to any future advances under any promissory note, and **specifically disavows any relatedness requirement**. The clause also rejects any requirement the mortgage be specifically referenced in a future note. The clause is broad in its scope, and **is not buried in the document in a way that might be misleading or allow for surprise**. The title of the mortgage itself, as an "open-end real estate mortgage" alerts any reader to the presence of a future advances clause and the possibility of later loans being superior, further minimizing the risk of surprise. The parties clearly stated their intent to cover such notes in the future advances clause.

Wells Fargo Bank, N.A. v. Valley Bank & Tr., No. 3-523/12-2031, 2013 Iowa App. LEXIS 951, at *6 (Iowa Ct. App. Sept. 5, 2013) (emphasis added).

When determining whether a future advance clause is effective, Courts consider the intent of the parties, whether the mortgage contains warnings including bold typeface or typeface noticeable from the rest of the document, and a relatedness requirement or waiver. See Freese Leasing, Inc., 253 N.W.2d at 927; Wells Fargo Bank, N.A., 2013 Iowa App. LEXIS 951, at *2; In re McMahon, 2018

11

Bankr. LEXIS 1766, at *3; In re Freed, Ch. 7 Case No. 18-01211, 2020 Bankr. LEXIS 1133, at *11 (Bankr. N.D. Iowa Apr. 24, 2020).

Here, the Trustee did not have any knowledge of the excess amounts loaned to Frank over and above the amounts included in the notes. The mortgages contain the future advance clauses in normal typeface, with no corresponding warning:

> b. All other obligations of Borrower and/or Mortgagors to Mortgagee, not existing or hereafter arising, whether direct or indirect, contingent or absolute and whether as maker or surety, including but not limited to, future advances and amount advanced and expenses incurred by Mortgagee pursuant to this Mortgage and any and all obligations of Borrower contained in the Loan Agreement dated March 1, 2011 and/or Security Agreement dated March 1, 2011 entered into between Mortgagee and Borrower.

(Ex. 17). Such a format is ineffective to comply with the applicable Iowa law. See Wells Fargo Bank, N.A., 2013 Iowa App. LEXIS 951, at *2; In re McMahon, 2018 Bankr. LEXIS 1766, at *3; In re Freed, 2020 Bankr. LEXIS 1133, at *11. In addition, the mortgages did not include a waiver of the "relatedness" requirement. See Freese Leasing, Inc., 253 N.W.2d at 927. There is similarly no evidence in the record to determine how the "excess loans" were used and whether they were related to the notes at issue. See Id. at 926.

The Court finds the future advance clauses in the documents fail to meet the legal standard. Thus, the mortgages are limited to the notes amount listed and not enforceable against the excess loans. The Trustee had no knowledge of the excess

loans. There is no evidence the Trustee intended to pledge collateral for amounts $2,732,467.99 over the face value of the amounts listed in the mortgages and notes.

### 2. Application of Payments

The Trust's final objection to the claim is the Trust does not owe the debt because the claim has already been paid in full. See 11 U.S.C. § 502(b)(1) (objection when claim is unenforceable against the debtor and property of the debtor). The Trust contends the Rand Estate applied the payments made on the various loans incorrectly under Iowa law. The Rand Estate applied payments individually to the loans it chose. For example, payments credited to the 2013 Loan stopped as soon as Loan 2014B was established. It essentially applied the payments to the newest loan first, and thus treating the older loan as being in default. This resulted in the older loan continuing to accrue interest at default rates until all of the newer loans were paid in full.

The Trust argues that under Iowa law payments should have been applied to the oldest debt first. The Rand Estate does not really dispute that this is the law in Iowa. The Rand Estate instead argues federal law applies and that absent an express instruction from Frank, Roger was free to apply the payments in the manner he chose. See, e.g., In re Custer, 88 B.R. 573, 575 (Bankr. D. Conn. 1988) ("A debtor making a voluntary payment has the absolute right to have that payment allocated among various obligations in accordance with his or her instructions.");

13

In re S & W Exporters, Inc., 16 B.R. 941, 945 (Bankr. S.D.N.Y. 1982) ("It is an accepted principle of contract law that a debtor has the right to direct the application of payment by the creditor at the time of or prior to payment and in failing to do so, the creditor has the right to apply payment as he sees fit.").

The mortgage and note documents, however, provide that Iowa law applies. The Court agrees with the Trust and will apply Iowa law.

Absent an agreement to the contrary, Iowa law applies payments on a first-in-time basis. See, e.g., Johnson v. Foster, 101 N.W. 741, 742 (Iowa 1904) ("There having been no agreement or direction as to the application of payments, the law will make application thereof so as to cancel the items of indebtedness first incurred in point of time."); Cain v. Vogt, 116 N.W. 786, 788 (Iowa 1908) ("Indeed, in the absence of an express agreement or an application by the debtor, the trend of authorities is to the effect that, as between two debts, one due, and one not due, the creditor has no choice, and the application must be upon the latter.").

Applying these payments on a first-in-time basis, the Court finds the Trust substantially overpaid the loans—as its accountant noted. At a minimum, there is no debt left to pay and the claim is unenforceable against the Trust under 11 U.S.C. § 502(b)(1).

**B. Motion to Dismiss**

The Rand Estate also made a Motion to Dismiss arguing the Trust does not qualify as a debtor. The Trust resisted. It argued it qualified as a debtor and that "the Rand Estate is not a creditor, and therefore has no standing" to raise an argument. (ECF Doc. 20). The Trust asserts that the only connection between it and the Rand Estate are the Mortgages which already have been paid.

The court may dismiss a case upon request of a party in interest. 11 U.S.C. § 1208(c). A "party in interest" is not defined in the Bankruptcy Code, however, Section 1109 states a "party in interest" includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." 11 U.S.C. § 1109(b).

Given the findings made above, the Rand Estate has no pecuniary interest in the bankruptcy. Absent a pecuniary interest in the bankruptcy, the Rand Estate lacks standing to make a Motion to Dismiss. The Rand Estate does not explicitly address standing but argues that it has a valid claim against the bankruptcy estate.

There is no claim remaining for the Rand Estate to assert. Section 101(10) defines a creditor as an entity having a claim against the debtor and section 101(5)(A) defines a claim as any right to payment. The Rand Estate's right to payment was satisfied prior to the bankruptcy. Thus, it does not have an enforceable claim and is not a creditor. Without a pecuniary interest in the

bankruptcy estate, the Rand Estate does not have standing to file the motion to dismiss.

## CONCLUSION

**WHEREFORE**, the Trust's objection to the Rand Estate's Proof of Claim is **GRANTED**.

**FURTHER**, the Rand Estate's Motion to Dismiss is **DENIED**.

Dated and entered:
 April 22, 2021

_____
THAD J. COLLINS,
CHIEF BANKRUPTCY JUDGE